UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-1398 JGB (KKx)** | Date | November 14, 2018 |
| Title | *Felipe Hernandez et al. v. County of San Bernardino et al.* | | |

Present: The Honorable     JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order GRANTING in Part and DENYING in Part Defendants' Motions for Summary Judgment (Dkt. Nos. 27, 28)

Before the Court are two Motions for Summary Judgment, one filed by Defendant John Holmes (Dkt. No. 28), and the other filed by Defendants County of San Bernardino, Isabel Jaramillo, Jerry Smith, Korey Oberlies, and Carlos Camacho (Dkt. No. 27) ("Motions"). The Court held a hearing on the Motions on October 29, 2018. After considering the oral arguments and papers filed in support of and in opposition to the Motions, the Court GRANTS IN PART and DENIES IN PART the Motions.

## I. BACKGROUND

On July 12, 2017, Felipe Hernandez and his son, Elijah Hernandez, filed a complaint alleging six causes of action: 1) violation of the Fourth Amendment (Seizure) pursuant to 42 U.S.C. § 1983 by Felipe Hernandez against the County of San Bernardino ("San Bernardino" or "County"), J. Holmes ("Holmes" or "Officer Holmes"), I. Jaramillo ("Jaramillo" or "Officer Jaramillo"), John Doe, J. Smith ("Smith"), Korey Oberlies ("Oberlies"), C. Camacho ("Camacho"), and Does 2-20[1]; 2) violation of the First Amendment (Free Speech) pursuant to 42 U.S.C. § 1983 by both plaintiffs against all defendants; 3) battery by Felipe Hernandez against Officer Holmes; 4) intentional infliction of emotional distress by Elijah Hernandez against Does 2–10, Oberlies, and Camacho; 5) municipal liability under 42 U.S.C § 1983 pursuant to *Monell* v.

---

[1] Plaintiffs allege that each individual defendant was "acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his [or her] employment." (Compl. at 3–4.)

*Dep't of Soc. Servs.* by both plaintiffs against San Bernardino; and 6) violation of Cal. Civ. Code § 52.1 (Bane Act) by Felipe Hernandez against all defendants. ("Complaint," Dkt. No. 1.)  On September 11, 2017, San Bernardino, Jaramillo, Smith, Oberlies, and Camacho filed an answer to the Complaint. ("S.B. Answer," Dkt. No. 13.)  Officer Holmes filed an answer on September 20, 2017. ("Holmes Answer," Dkt. No. 16.)

On August 20, 2018, San Bernardino, Jaramillo, Smith, Oberlies, and Camacho (collectively, "San Bernardino Defendants") filed a Motion for Summary Judgment ("S.B. MSJ"), accompanied by the following attachments:

- Statement of Undisputed Facts ("S.B. SUF," Dkt. No. 27-1);
- Declaration of John Wilcoxson (Dkt. No. 27-2);
- Declaration of Robert Fonzi ("Fonzi Decl.," Dkt. No. 27-3);
- Declaration of Jerry Smith (Dkt. No. 27-4);
- Request for Judicial Notice ("S.B. RJN," Dkt. No. 27-5)[2];
- and Certificate of Service (Dkt. No. 27-6).

On the same day, Holmes filed a separate Motion for Summary Judgment ("Holmes MSJ"), accompanied by a Statement of Uncontroverted Facts ("Holmes SUF," Dkt. No. 28-1) and a Proposed Order (Dkt. No. 28-2).  He also filed the Declaration of Jonathan Grisham (Dkt. No. 29), accompanied by Exhibits 3–7 (Dkt. Nos. 29-1–5).

Holmes manually filed Exhibits 1 and 2, the videos taken by Felipe Hernandez and Elijah Hernandez, respectively.  (See Dkt. No. 30.)  On August 18, 2018, Holmes also filed a Request for Judicial Notice ("Holmes RJN," Dkt. No. 31)[3].

---

[2] The San Bernardino Defendants request that the Court take judicial notice of the Complaint, the S.B. Answer, and the June 8, 2018 Scheduling Order issued by this Court.  The Court DENIES the S.B. RJN because records on this Court's own docket in this matter are improper subjects of judicial notice.

[3] Holmes requests that the Court take judicial notice of the following:

1) On December 2, 2015, 14 people were killed and 22 others were seriously injured in a terrorist attack consisting of a mass shooting and an attempted bombing at the Inland Regional Center in San Bernardino, California. The perpetrators, Syed Rizwan Farook and Tashfeen Malik, a married couple living in the city of Redlands, targeted a San Bernardino County Department of Public Health training event and Christmas party of about 80 employees in a rented banquet room.

2) High Desert Community Watch News Network posts videos with titles such as "Cop Tries to Punk My Son But Cop Gets Punked", "Tyrant Alert!!!!!!", and "JS1 Amendment Audit San Bernardino PD FAIL!!"

On August 27, 2018, Plaintiffs filed an Opposition to the Holmes MSJ ("Opp.-Holmes," Dkt. No. 32), accompanied by the following attachments:

- Declaration of Krista R. Hemming ("Hemming Declaration," Dkt. No 32-1);
- Statement of Genuine Disputes of Material Fact ("PSMF-Holmes," Dkt. No. 32-2, pp. 2–19)
- Statement of Undisputed Facts and Genuine Disputes ("PSUF," Dkt. No. 32-2, pp. 19–25)
- And Exhibits marked B, C, E, and F.[4] (Dkt. Nos. 32-3–7.)

On August 28, 2018, Plaintiffs filed an Opposition to the S.B. MSJ ("Opp.-S.B.," Dkt. No. 36), accompanied by the following attachments:

- The Hemming Declaration (Dkt. No. 36-1);
- The same exhibits appended to the Opp.-Holmes (Dkt. Nos. 36-2–6);
- Statement of Genuine Disputes of Material Fact ("PSMF-S.B.," Dkt. No. 36-7, pp. 2–11);
- Statement of Undisputed Facts and Genuine Disputes ("PSUF," Dkt. No. 36-7 pp. 11-17),[5]
- and a Notice of Manual Filing of Exhibit A, the video taken by Felipe Hernandez (Dkt. No. 36-8).[6]

---

(Holmes RJN at 1–2.) Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). An adjudicative fact may be judicially noticed if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court GRANTS the RJN as to the Inland Regional Center attack as it is "not subject to reasonable dispute" both because it is generally known in the jurisdiction and because it can be easily confirmed by "sources whose accuracy cannot reasonably be questioned." See id. With regard to Plaintiffs' online videos, the Court does not rely on them in deciding the issues presented by the Motions; accordingly, the request is DENIED AS MOOT.

[4] While both Dkt. No. 32-6 and 32-7 are marked "Exhibit F," they contain two different documents: the depositions of Felipe Hernandez and Elijah Hernandez, respectively.

[5] The Statements of Undisputed Facts and Genuine Disputes submitted by Plaintiffs in support of both Oppositions are identical. The Court therefore refers to them interchangeably as "PSUF."

[6] Plaintiffs filed a duplicate Notice of Manual Filing of Exhibit A on August 29, 2018. (Dkt. No. 39). The San Bernardino Defendants object to Plaintiffs' Exhibit A on the basis that it

Also on August 28, 2018, Plaintiffs filed Objections to Evidence in Support of the Holmes MSJ ("P. Obj.-Holmes," Dkt. No. 34) and Exhibit D (Dkt. No. 35). Plaintiffs filed Objections to Evidence in Support of the S.B. MSJ ("P. Obj.-S.B.," Dkt. No. 38) on August 29, 2018.

On August 31, 2018, Holmes filed a Reply ("Holmes Reply," Dkt. No. 42.) On the same day, he filed a Statement of Genuine Disputes of Material Facts ("Holmes SMF," Dkt. No. 43) and Objections to Plaintiffs' Evidence in Support of the Opp.-Holmes ("Holmes Obj.," Dkt. No. 44). The San Bernardino Defendants filed a reply on September 4, 2018 ("S.B. Reply," Dkt. No. 45), accompanied by the following attachments:

- Response to Plaintiffs' Objections to Defendants' Evidence in Support of the S.B. MSJ (Dkt. No 45-1),
- Objections to Plaintiffs' Statement of Genuine Disputes of Material Fact ("S.B. Obj.," Dkt. No. 45-2),
- and a Certificate of Service (Dkt. No. 45-3).

## I.  FACTS

Except as noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted.[7] They are "admitted to exist without controversy" for purposes of the Motions. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

Plaintiffs run a YouTube channel called High Desert Community Watch News Network, on which they post videos they film of public officials for the purpose of testing officers' respect for First Amendment rights. (Opp.-Holmes at 2; Holmes MTD at 5–6.) Plaintiffs refer to these activities as "First Amendment Audits." (Opp. Holmes at 2; Holmes MTD at 5–6.) On May 17, 2016, Plaintiffs recorded video outside of several San Bernardino County government buildings. (S.B. SUF ¶ 3.) They began in front of the County of San Bernardino Probation Juvenile Services building, continued to the parking lot of the county building, and then moved on to the San Bernardino County Courthouse. (Id.) Felipe Hernandez wore a black tee-shirt and blue jeans. (PSUF ¶ 54.) Elijah Hernandez wore a blue shirt, tan pants, and a bag on his back.[8] (Id. ¶ 6.)

---

has not been authenticated, as required by F.R.E. 901. (S.B. Reply at 11.) At the October 29, 2018 hearing, the Court ordered Plaintiffs to submit a declaration establishing the authenticity of the video by close of business the following day. Plaintiffs filed the Declaration of Felipe Hernandez on October 30, 2018. (Dkt. No. 50.) The Court therefore OVERRULES the San Bernardino Defendants' objection to Plaintiffs' Exhibit A.

[7] The Court considers the parties' evidentiary objections where necessary. All other objections are OVERRULED as moot.

[8] Holmes disputes whether Elijah Hernandez's clothing and type of bag were visible from Holmes' distance. (Holmes SMF ¶ 6.) The Court takes this to refer to Holmes' distance when

Superior Probation Officer Noel Leon-Campbell informed Holmes of a report of "some suspicious males taking videos and photos of the probation officers and government buildings" and ordered Holmes and another officer[9] to investigate. (Holmes SUF ¶ 5, 8.)  When Holmes and several other officers went to investigate, Holmes observed Plaintiffs walking southbound in the parking lot. (Holmes SUF ¶ 9.)  Elijah Hernandez appeared to be filming government buildings, and Felipe Hernandez also appeared to be filming or taking pictures. (Holmes SUF ¶ 10.)[10]  Officer Jaramillo called out to Plaintiffs, and Plaintiffs continued to walk away from the officers. (Holmes SUF ¶¶ 11, 12.)

**A. The Stop**

Holmes "was concerned and suspected that these two individuals might be conducting surveillance on or casing a County government building in furtherance of a crime, whether burglary, arson, breaking and entering, robbery, or . . . some sort of terrorist activity."[11] (Holmes SUF ¶ 13.)  Holmes was aware "that in the world of law enforcement intelligence gathering, it is recognized that terrorists will pose as innocent citizens and perform surveillance operations in an effort to gain information about a location and to see what, if any, law enforcement response will occur."[12]  (Id. ¶ 14.)  In addition, the attack on the Inland Regional Center, in which a shooter killed fourteen people and seriously injured twenty-two more, had occurred less than six months earlier, approximately a mile away.[13]  (Id. ¶ 15.)  At the October 29, 2018 hearing, counsel for Holmes also stated that Plaintiffs were being evasive.  Plaintiffs dispute this.

---

he first saw Plaintiffs.  Holmes asserts that both Plaintiffs had backpacks. (Holmes SUF ¶ 9.)  Plaintiffs claim that neither of them had a backpack (PDMF-Holmes ¶ 9), but that Elijah Hernandez had a camera bag (PSUF ¶ 6).

[9] The other officer, Officer Razo, is not a named defendant.

[10] According to Holmes, Elijah Hernandez had "what appeared to be metal objects in both hands," one of which "appeared to be a camera." (Holmes SMF ¶10.)  Holmes states that he was uncertain what the other object was.  (Id.)  Plaintiffs dispute this fact, stating that "Elijah was clearly only carrying a camera." (PSMF-Holmes ¶ 10.)

[11] Plaintiffs dispute this characterization of the situation, stating that "[t]here was nothing suspicious about Plaintiff[s'] activities [] that would lead some[one] to believe they were conducting surveillance for a burglary, arson, breaking and entering, robbery, or terrorist activity." (PSMF-Holmes ¶ 13.)  However, they do not dispute Holmes' subjective belief that their activity was suspicious.

[12] The Court takes this fact to be undisputed because Plaintiffs' response, which provides the definition of "surveillance" according to the Department of Homeland Security, does not directly address the asserted fact. (See PSMF-Holmes ¶ 14.)

[13] The Court takes this statement of fact as undisputed because Plaintiffs' dispute does not respond to the content of the statement.  (See id.)  Plaintiffs also assert that the Inland Regional Center attack is irrelevant and object to it being considered.  (See P. Obj.-Holmes ¶ 2;

Holmes walked quickly towards Plaintiffs, approached Felipe Hernandez, and asked him to stop. (Holmes SUF ¶¶ 16, 17.) Felipe Hernandez refused to stop. (Holmes SUF ¶ 17.) Holmes then grabbed Felipe Hernandez by his pants[14] and asked for identification. (Holmes SUF ¶ 19; PSUF ¶¶ 28, 29.) Felipe Hernandez indicated that he did not need an ID because he was "not committing a crime." (Holmes SMF ¶ 31; PSMF-Holmes ¶ 22.) Felipe Hernandez asked Holmes to let him go. (PSUF ¶ 39.) Holmes stated, "I told you, I am detaining you." (PSUF ¶ 45.) Felipe Hernandez was speaking on his cell phone during this interaction. (S.B. SUF ¶ 12; PSMF-Holmes ¶ 28.) The parties dispute the tone and precise content of the interaction between Felipe Hernandez and Holmes while Holmes was holding Hernandez by the pants.

**B. The Takedown**

Eventually, Holmes dropped Felipe Hernandez to the ground. (Holmes SUF ¶ 30[15]; S.B. SUF ¶ 18; PSUF ¶ 46.) The parties dispute the facts leading up to the takedown.[16]

**1. Holmes' Account**

According to Holmes, Felipe Hernandez "repeatedly tr[ied] to break Holmes' hold" (Holmes SUF ¶ 26), his "movements bec[oming] more frequent and more forceful" (Id. ¶ 27). Holmes also states that Felipe Hernandez's "equipment came close to hitting [Holmes] in the face as [Felipe Hernandez] flailed back and forth." (Id.) Holmes' account continues, "Hernandez's efforts to break Holmes' hold escalated, and he continued shouting profanities at Holmes." (Id. ¶ 29.) "Hernandez then spun towards Holmes, pushing his right shoulder into

---

P. Obj.-S.B. ¶ 4.) Plaintiffs' objection is OVERRULED because the fact that an attack had taken place at a nearby government building less than six months earlier has at least some tendency to make a fact of consequence to the action more or less probable. See F.R.E. 401. Specifically, it has a tendency to make it somewhat more likely that the officers had reasonable suspicion to stop Plaintiffs based on suspicion of planning terrorist activity.

[14] Holmes grabbed either Felipe Hernandez's back right pocket (Holmes SUF ¶ 19) or his belt loop (PSMF-Holmes ¶ 19).

[15] Plaintiffs object to Holmes SUF ¶ 30 as irrelevant. (P. Obj.-Holmes ¶ 30.) The fact that Holmes dropped Felipe Hernandez to the ground is clearly relevant to Plaintiffs' battery claim and also asserted by Plaintiffs (see PSUF ¶ 46). Insofar as Plaintiffs object to this specific fact, their objection is OVERRULED.

[16] Both Felipe Hernandez and Elijah Hernandez were filming during the encounter. Felipe Hernandez's video was submitted as Plaintiffs' Exhibit A and Holmes' Exhibit 1. Elijah Hernandez's video was submitted by Holmes as Exhibit 2. Elijah Hernandez's camera was pointed away from his father and Holmes during and immediately preceding the takedown.

Holmes' left chest area."[17] (Id. ¶ 30.) At that point, Holmes dropped Felipe Hernandez to the ground. (Id.)

### 2. The San Bernardino Defendants' Account

The San Bernardino Defendants affirm that, while Holmes held onto Felipe Hernandez's pants, "Felipe Hernandez moved his upper body back and forth to gain leverage to break free from Officer Holmes." (S.B. SUF ¶ 16.) According to the San Bernardino Defendants' SUF, Holmes then "told Felipe Hernandez to stop trying to break free from him." (Id. ¶ 17.) "[B]ecause Felipe Hernandez refused to stop and continued to try to break free from Officer Holmes, in an effort to control Felipe Hernandez, Officer Holmes took Felipe Hernandez to the ground." (Id. ¶ 18.)

### 3. Plaintiffs' Account

Plaintiffs assert that Felipe Hernandez did not attempt to break away from Holmes' hold (PSMF-Holmes ¶ 26), "did not come close to hurting or hitting J. Holmes" or "flail back and forth" (Id. ¶ 27), and "did not escalate efforts to break the hold" or "shout[] profanities at Holmes" (Id. ¶ 29).[18] Plaintiffs claim that Felipe Hernandez only "attempted to walk away." (Id. ¶ 26, 27). According to Plaintiffs' account, Holmes "grew impatient with Plaintiff Felipe Hernandez and in an escalation of force threw him to the ground." (Id. ¶ 30.)

## C. After the Takedown

While Felipe Hernandez was still on the ground, Holmes handcuffed him and asked if he had any weapons. (Holmes SUF ¶ 33.) Felipe Hernandez responded that he did not. (Id.) Holmes conducted a pat down and then moved Felipe Hernandez to a bench. (Id. ¶ 33, 34.) City of San Bernardino Police Officers arrived about eight minutes later. (PSUF ¶¶ 61, 63.) Approximately twenty to thirty minutes from the time the probation officers first made contact with Plaintiffs, the officers released Felipe Hernandez.[19] [20] (S.B. SUF ¶ 22; PSMF-S.B. ¶ 22.)

---

[17] Plaintiffs objects to Holmes SUF ¶ 30 as irrelevant. (P. Obj.-Holmes ¶ 30.) Whether Felipe Hernandez pushed his shoulder into Holmes is relevant to the reasonableness of Holmes' use of force. Insofar as Plaintiffs object to this specific fact, their objection is OVERRULED.

[18] Plaintiffs also state that Felipe Hernandez "did not assault or batter a police officer." (Id. ¶ 30.) It is not clear if Plaintiffs mean by this to dispute Holmes' statement that Felipe Hernandez pushed his shoulder into Holmes' chest.

[19] The San Bernardino Defendants indicate that Felipe Hernandez was released "[a]fter approximately 20 minutes from the time of the initial contact by the probation officers." (S.B. SUF ¶ 22.) Plaintiffs state that "Felipe Hernandez was detained well over 20 minutes," citing Exhibit A. min. mark 3:00–29:59. (PSMF-S.B. ¶ 22.)

[20] The facts relating to the officers' treatment of Elijah Hernandez during the time his father was handcuffed are contested. (See PSUF ¶¶ 47–60; Holmes SMF ¶¶ 47–60.) Though

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the nonmoving party's case.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial.  Celotex, 477 U.S. at 324.  The non-moving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.  When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party.  Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991).  Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

these facts are relevant to Elijah Hernandez's claim for intentional infliction of emotional distress (IIED), the Court does not set them forth here because a discussion of the facts is not necessary to decide the San Bernardino Defendants' motion as to the IIED claim.

## III. DISCUSSION

### A. Fourth Amendment Unreasonable Seizure[21]

Plaintiffs argue that "[t]he seizure of [Felipe] Hernandez was unreasonable in that[] Defendants did not have a warrant, probable cause, or even reasonable suspicion to believe [Felipe] Hernandez . . . had engaged in, was engaging in, or was about to engage in any criminal conduct." (Compl. ¶ 70.) Defendants do not dispute that the probation officers seized Felipe Hernandez. Rather, they assert that the seizure was lawful because the officers had reasonable suspicion for the initial stop (Holmes MSJ at 10–11; S.B. MSJ at 25) and probable cause for arrest once Felipe Hernandez resisted (Holmes MSJ at 14–15; S.B. MSJ at 25). Further, they argue that each of the individual officers involved is entitled to qualified immunity. (Holmes MSJ at 16; S.B. MSJ at 22.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). An officer will be denied qualified immunity if (1) taking the alleged facts in the light most favorable to the party asserting injury, the officer committed a constitutional violation, and (2) the officer's specific conduct violated "clearly established" federal law at the time of the alleged misconduct such that a reasonable officer would have understood the conduct to be unlawful. Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 201-02 (2001)). Courts may analyze these prongs in either order. Pearson, 555 U.S. at 236. Where no precedent clearly establishes that the conduct is unlawful, a court may find the defendants entitled to qualified immunity without determining whether their conduct in fact violated the Constitution. See, e.g., Weddle v. Nutzman, 725 Fed. Appx. 596, 596–7 (9th Cir. 2018).

---

[21] The San Bernardino Defendants do not advance an argument as to reasonable suspicion or probable cause, but refer to the Declaration of Robert Fonzi, whom they describe as a "police force/training expert." (S.B. MSJ at 25.) In his declaration, Fonzi concludes that the officers had reasonable suspicion and probable cause to detain Felipe Hernandez and presents several points which form the basis for his conclusions. (Fonzi Decl. at 6–8.) The Court SUSTAINS Plaintiffs' objection to Fonzi's declaration (see P. Obj.-S.B. ¶¶ 23–29) because it does not offer "knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." See F.R.E 702(a). Rather, it offers legal conclusions. Moreover, the Court notes that Fonzi's conclusions are not based on "specific articulable facts" or "objective and reasonable inferences." See Lopez-Soto, 205 F.3d at 1105. Instead, Fonzi relies on tendentious characterizations of Plaintiffs' actions and motives, the latter of which were not known to the officers at the time of the encounter with Plaintiffs. (See Fonzi Decl. at 6–7.) The Court therefore addresses only Holmes' arguments in favor of findings of reasonable suspicion and probable cause.

The clearly established law must be "particularized" to the facts of the case. White v. Pauly, 137 S. Ct. 548, 552 (2017). A constitutional right is clearly established for the purposes of qualified immunity if "existing precedent . . . placed the statutory or constitutional question confronted by the official beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). Notwithstanding al-Kidd's reliance on pre-existing case law, the Supreme Court has held that a plaintiff need not point to a case perfectly consonant with a defendant's actions to defeat qualified immunity. Hope v. Pelzer, 534 U.S. 730, 741–46 (2002) (explaining officials may not invoke qualified immunity if they have "fair and clear warning" that their actions are unlawful); see also C.B. v. City of Sonora, 769 F.3d 1005, 1026–27 (9th Cir. 2014) (finding a clearly established Fourth Amendment right in novel factual circumstances). Courts considering qualified immunity at summary judgment "view the facts in the light most favorable to the nonmoving party." Plumhoff v. Rickard, 134 S. Ct. 2012, 2017 (2014).

1. **Initial Stop**

The Fourth Amendment's protections against unreasonable seizures extend to brief investigatory stops that fall short of traditional arrest. Terry v. Ohio, 392 U.S. 1, 9 (1968). To justify an investigatory stop, an officer must have "reasonable suspicion to believe that criminal activity may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations omitted). Reasonable suspicion must be supported by "specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000). The likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. United States v. Sokolow, 490 U.S. 1, 7 (1989). Courts look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. Arvizu, 534 U.S. at 273.

Felipe Hernandez's only concrete acts justifying the stop were 1) taking photographs and filming government buildings and officials, 2) refusing to respond to the officers' questioning, and 3) walking away from the officers.[22] If these facts alone were sufficient to support a finding of

---

[22] At the hearing, Holmes also gave as a basis for reasonable suspicion that Plaintiffs were "dodging" the officers, which Plaintiffs disputed. Holmes put forth the additional fact that Plaintiffs parked far away from the buildings they were photographing. However, this fact was not known to the officers at the time of the stop. Thus, this piece of information cannot support a finding of reasonable suspicion. See United States v. Magallon-Lopez, 817 F.3d 671, 675 (9th Cir. 2016) ("[T]he facts justifying the stop must be known to officers at the time of the stop."). Finally, Holmes also argued that, given the use of phones as detonation devices in terrorist attacks, even phones can be considered part of a weapon. Considering the vast majority of Americans own and regularly use cell phones, the Court is not convinced that possession of a mobile phone, without additional allegations that the phone was used in an unusual and suspicious manner, provides a basis for reasonable suspicion. The Holmes PSUF also mentions

reasonable suspicion, law enforcement officers could effectively detain anyone for taking photographs or filming near a government building. Felipe Hernandez's refusal to answer questions and his decision to walk away likewise provide little support for a finding of reasonable suspicion. See Illinois v. Wardlow, 528 U.S. 119, 125 ("[W]hen an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business.").

However, "officers may [also] take into account the context in which suspicious activity occurs 'in determining whether the circumstances are sufficiently suspicious to warrant further investigation,'" United States v. Smith, 633 F.3d 889, 893–94 (9th Cir. 2011) (quoting Wardlow, 528 U.S. at 124). In this case, Holmes' suspicion was also based on the fact that the Inland Regional Center attack had occurred less than six months before and his knowledge that "terrorists will pose as innocent citizens and perform surveillance operations."[23] (Holmes MSJ at 10.) With regard to the Inland Regional Center shooting, the Court notes that Defendants have not put forth any evidence that the perpetrators of that attack first surveilled the building, making the connection between that attack and Plaintiffs' actions tenuous. Moreover, as an Illinois District Court compellingly stated when considering a case with similar facts,

> Sadly, we live in an age where virtually every public gathering place in modern American life - elementary schools, high schools, community colleges, universities, churches and other houses of worship, movie theaters, nightclubs, shopping malls, airports, concert venues, offices, and restaurants - has been subject to a mass shooting. Seemingly, there will always be a similar incident fresh in the mind of police that could potentially justify their suspicion of a person who they believe is approaching a building or public space in a way they deem suspicious.

---

that "both [Plaintiffs] had backpacks" (¶ 9) and that "[o]ne was dressed in black" (¶ 10). However, these facts are disputed (see PSMF-Holmes ¶¶ 9, 10). Moreover, Holmes did not cite these facts as bases for reasonable suspicion in his MSJ or at the hearing. Thus, the Court disregards them.

[23] Holmes also puts forth as a basis for reasonable suspicion that "[t]he San Bernardino County Government Center and Courthouse are high level target assets that have significant level of concern for terrorist attack." (Holmes MSJ at 11; Holmes Decl. ¶ 15.) The Court does not consider this factor because the statement is ambiguous, i.e., it is unclear whether the buildings were designated "high level target assets" by an agency with the authority to make such designations or if it is simply Holmes' opinion. See F.R.E. 403. Moreover, the statement lacks foundation because Holmes does not provide a source or otherwise explain the basis for the statement. See F.R.E. 602. If it is his personal opinion, it is inadmissible because it is based on specialized knowledge in a field in which Holmes has not established himself as an expert. See F.R.E. 701, 702. Finally, Holmes does not make clear that he knew at the time of the stop that the buildings were "high level target assets." Thus, this piece of information cannot support a finding of reasonable suspicion. See Magallon-Lopez, 817 F.3d at 675.

Swenie v. Vill. of Maywood, No. 17-CV-1010, 2018 WL 4635645, at *1 (N.D. Ill. Sept. 27, 2018). In addition, Holmes' reliance on his knowledge that "terrorists will pose as innocent citizens and perform surveillance operations" suggests that Plaintiffs in this case in fact appeared to be "innocent citizens." In effect, Holmes argues that looking innocent can be a basis for reasonable suspicion. The Court cannot accept this argument. Considering all of these circumstances together, as it must, see Arvizu, 534 U.S. at 273, the Court has serious doubts as to the constitutionality of the stop.

Nonetheless, the Court finds that the officers are entitled to qualified immunity because it is aware of no precedent existing at the time of the stop that "placed the . . . constitutional question beyond debate." See Al-Kidd, 563 U.S. at 741. Plaintiffs point to no case law indicating that reasonable suspicion does not exist under circumstances similar to those under which Felipe Hernandez was detained. Plaintiffs do, however, draw the Court's attention to California Penal Code § 148(g), which provides that

> The fact that a person takes a photograph or makes an audio or video recording of a public officer or peace officer, while the officer is in a public place or the person taking the photograph or making the recording is in a place he or she has the right to be, does not constitute, in and of itself, a violation of subdivision (a)[24], nor does it constitute reasonable suspicion to detain the person or probable cause to arrest the person.

(emphasis added.) The statute does not address the filming of government buildings. Moreover, the Court reads the statute to preclude a finding of reasonable suspicion or probable cause based solely on the filming of public officials; it does not prohibit consideration of the fact that a suspect filmed public officials as one factor among many in the reasonable suspicion or probable cause determination. Because neither case law nor statute put Defendants "on notice that [their] conduct would be clearly unlawful, summary judgment based on qualified immunity [as to Plaintiffs' unreasonable stop claim] is appropriate." See Saucier, 533 U.S. at 202.

   2. Arrest

A warrantless arrest by an officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004). "Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." Allen v. City of Portland, 73 F.3d 232, 237 (9th Cir. 2005) (citation and quotation omitted). Probable cause depends on the reasonable conclusions to be drawn from the facts known to the

---

[24] California Penal Code § 148(a) makes it a crime to "willfully resist[], delay[], or obstruct[] any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment." Cal. Pen. Code § 148(a)(1).

arresting officer at the time of the arrest. Devenpeck, 543 U.S. at 153. If an arresting officer could have believed an arrest to be lawful in light of clearly established law and the information the officer possessed at the time of the arrest, the officer is entitled to qualified immunity. Anderson v. Creighton, 483 U.S. 635, 641 (1978). This includes law enforcement officials who "reasonably but mistakenly conclude that probable cause is present." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Holmes argues that "the officers had probable cause to arrest Hernandez for a violation of California Penal Code section 148(a)1[25] . . . once Hernandez started struggling with Officer Holmes." (Holmes MSJ at 15.) Plaintiffs contend that Felipe Hernandez did not struggle, but attempted to walk away. (PSMF-Holmes ¶ 26, 27.) Courts have interpreted Section 148(a)(1) to apply to a broad range of activity, for example, continuing to speak to a detained suspect after being ordered to stop, In re Muhammed C., 116 Cal. Rptr. 2d 21, 25 (Ct. App. 2002); repeatedly interrupting officers trying to interview witnesses, Arias v. Amador, 61 F. Supp. 3d 960, 972–73; refusing to comply with an officer's orders to sit down and submit to detention and attempting to evade the officer's grasp, In re J.C., 176 Cal. Rptr. 3d 503, 507 (Ct. App. 2014); giving false identity to the police, People v. Christopher, 40 Cal. Rptr. 3d 615, 622 (Ct. App. 2006); hurriedly walking away and subsequently running and hiding from police, People v. Allen, 167 Cal. Rptr. 502, 503–04, 506 (Ct. App. 1980); and being "belligerent, refus[ing] to give [one's] name, refus[ing] to keep [one's] hands visible, and refus[ing] to submit to a patdown," People v. Lopez, 13 Cal. Rptr. 3d 921, 924 (Ct. App. 2004). However, because the parties dispute Felipe Hernandez's actions preceding the arrest, there remains a genuine issue of material fact as to whether probable cause existed.

Holmes argues he is entitled to qualified immunity because he "reasonably believed he had . . . probable cause." (Holmes MTD at 17.) In the Ninth Circuit,

> The determination of whether a reasonable officer could have believed his conduct was lawful is a determination of law that can be decided on summary judgment only if the material facts are undisputed. . . . If, however, there is a material dispute as to the facts regarding what the officer or the plaintiff actually did, the case must proceed to trial, before a jury if requested.

LaLonde v. County of Riverside, 204 F.3d 947, 953 (9th Cir. 2000) (citation omitted). Here, the reasonableness of Holmes' belief that he had probable cause depends on whether Hernandez actually committed acts that amounted to "resist[ing], delay[ing], or obstruct[ing]" the officers in the discharge of their lawful duties. See Cal. Penal Code § 148(a)(1).

Because there remain genuine disputes of material fact as to the existence of probable cause and the reasonableness of Holmes' belief that probable cause existed, summary judgment is DENIED as to Plaintiffs' Fourth Amendment claim.

---

[25] See supra note 24.

### B. First Amendment Free Speech

Plaintiffs allege that "the defendants sought to chill Mr. Hernandez's and Elijah's free speech rights" by "stopping, detaining and harassing the Plaintiffs." (Compl. ¶ 81.) Holmes argues that Plaintiffs' First Amendment claim fails because "Officer Holmes[] was not trying to deter anyone's First Amendment rights" and "[n]othing that he did would chill anyone's First Amendment rights." (Holmes MTD at 16.) Defendants also claim they are entitled to qualified immunity, though they do not advance arguments specific to the First Amendment claim. (Holmes MSJ at 16–17; S.B. MSJ at 24–25.)

"There are three elements to a First Amendment retaliation claim . . . : [A] plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016). However, "[a] plaintiff may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives." Mendocino Environmental Center v. Mendocino County, 14 F.3d 457, 464 (9th Cir. 1994).

The Ninth Circuit has held that "retaliatory police action such as an arrest or search and seizure would chill a person of ordinary firmness from engaging in future First Amendment activity." Ford v. City of Yakima, 706 F.3d 1188, 1193 (9th Cir. 2013). Additionally, it is clearly established that police officers may not use their authority to retaliate against protected speech, even if probable cause exists. Id. at 1195-96 ("Duran[ v. City of Douglas, 904 F.2d 1372 (9th Cir. 1990)] clearly established that police officers may not use their authority to punish an individual for exercising his First Amendment rights, while Skoog[ v. County of Clackamas, 469 F.3d 1221 (9th Cir. 2006)] clearly established that a police action motivated by retaliatory animus was unlawful, even if probable cause existed for that action.").

A reasonable jury could find that Plaintiffs were engaged in constitutionally protected activity. The parties do not dispute that photographing government buildings and officers is protected speech. The First Amendment protects both speech and "conduct that is not speech but is nevertheless expressive in nature." Corales v. Bennett, 567 F.3d 554, 562 (9th Cir. 2009). In the Ninth Circuit, it is clearly established that the First Amendment protects the "right to film matters of public interest," such as the activities of police officers at a protest. See Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995). See also Reed v. Lieurance, 863 F.3d 1196, 1211 (9th Cir. 2017) ("[Plaintiff] was engaging in the First Amendment-protected activity of observing a government operation.") Filming of public officials and government buildings easily fits within the established range of protected First Amendment activities.

Next, the Court considers whether Defendants' actions – allegedly "stopping, detaining and harassing the Plaintiffs" (Compl. ¶ 81) – "would chill a person of ordinary firmness" from continuing to film or photograph. See O'Brien, 818 F.3d at 932. The Ninth Circuit has held that arrest, Lacey v. Maricopa County, 693 F.3d 896, 917 (9th Cir. 2012), threat of arrest, Reed, 863

F.3d at 1212, search and seizure, Skoog, 469 F.3d at 1232, booking and jailing, Ford, 706 F.3d at 1194 (9th Cir. 2013), and even prolonged administrative investigations, White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000), would chill a person of ordinary firmness. Thus, arresting Felipe Hernandez was certainly sufficient to chill his First Amendment activity. A reasonable jury could also find that the initial stop of Felipe and Elijah Hernandez and Holmes' subsequent acts of dropping Felipe Hernandez to the ground, handcuffing him, and patting him down would also satisfy the second prong of the First Amendment retaliation test.

The evidence submitted raises a genuine dispute as to whether Plaintiffs' filming "was a substantial or motivating factor" in the officers' decision to stop Felipe and Elijah Hernandez and to drop Felipe Hernandez to the ground, handcuff, and arrest him. See O'Brien, 818 F.3d at 932. Holmes claims he had no intent to deter Plaintiffs' First Amendment conduct. (Holmes MSJ at 16.) Holmes offers as evidence of his intent the facts that "Plaintiffs . . . continued to video and film throughout their interactions with Officer Holmes" and Holmes "never took the camera or equipment, or their photographs." (Id.) However, the circumstances of the initial stop – specifically, that there was nothing suspicious about Plaintiffs beyond the fact that they were filming – could lead a reasonable jury to infer that the officers approached Plaintiffs for the purpose of chilling their First Amendment activity.

"[V]iew[ing] the facts in the light most favorable" to Plaintiffs, see Plumhoff, 134 S. Ct. at 2017, Defendants are not entitled to qualified immunity on the First Amendment claim because "the state of the law at the time g[ave] officials fair warning that their conduct [was] unconstitutional," see Ellins v. City of Sierra Madre, 710 F.3d 1049, 1064 (9th Cir. 2013). Existing case law established that photographing and filming matters of public interest is protected First Amendment Activity. See Fordyce, 55 F.3d at 439. It was also clearly established that "arrest or search and seizure would chill a person of ordinary firmness." Ford, 706 F.3d at 1193. Under these circumstances if, as Plaintiffs claim, Defendants acted with the intent to chill Plaintiffs' protected conduct, they could not have reasonably believed their actions were lawful. Thus, summary judgment as to Plaintiffs First Amendment claim is DENIED.

## C. Battery

Plaintiffs allege that Holmes "intentionally and unlawfully touch[ed] Mr. Hernandez by grabbing his pants, and then subsequently used unreasonable force to slam Mr. Hernandez to the ground and handcuff him to prevent his escape and overcome any potential resistance." (Compl. ¶ 88.) Holmes argues that his use of force was reasonable. (Holmes MSJ at 12.) Specifically, he contends he "had a right to take Hernandez to the ground and handcuff him."[26] (Id. at 13.) Holmes also argues he is entitled to various state law immunities. (Id. at 18–20.)

For Defendants to prevail on summary judgment on Plaintiff's state law battery claim, the undisputed facts must demonstrate that the officers' use of force against Felipe Hernandez was

---

[26] Holmes does not address whether his use of force in grabbing Felipe Hernandez's pants was reasonable.

reasonable. See Brown v. Ransweiler, 89 Cal. Rptr. 3d 801, 811 (2009) (because a police officer is "charged with acting affirmatively and using force as part of their duties," a plaintiff suing on grounds of battery resulting from police action must prove that "the police officer's use of force was unreasonable"). To determine whether the force used was reasonable, a jury should consider "the amount of force that would have appeared reasonable to [an officer] in [the defendant]'s position under the same or similar circumstances." CACI No. 1305. The factors to be considered include: "(a) The seriousness of the crime at issue; (b) Whether [the plaintiff] reasonably appeared to pose an immediate threat to the safety of [the defendant] or others; and (c) Whether [the plaintiff] was actively resisting arrest or attempting to evade arrest." Id.

Summary judgment is inappropriate as to the battery claim because a genuine issue of material fact exists as to whether the force used by Holmes was reasonable. The parties advance very different versions of the facts leading up to the takedown and handcuffing, which were not recorded in either of the videos submitted into evidence. A rational trier of fact could find that Felipe Hernandez did not jerk back and forth or push his shoulder into Holmes, and thus that Holmes' use of force in taking him to the ground and handcuffing him was unreasonable.

The Court cannot conclude at this time that Holmes is entitled to the state law immunities that depend on the reasonableness of his use of force, i.e., Cal. Gov. Code §§ 820.2[27] and Cal. Penal Code 835(a).[28] Nor is it clear that Holmes is shielded by Cal. Civ. Code § 50, which applies to an officer using necessary force, or Cal. Gov. Code § 820.4, which applies when an officer exercises "due care[] in the execution or enforcement of any law." Cal. Penal Code § 196, which defines when homicide by a public officer is justifiable, is not applicable here. Cal. Gov. Code § 845.8(b)(3) protects public entities and employees from liability for an injury caused by a person resisting arrest, whether that injury is to a third party or to the resisting person himself. See Ladd v. County of San Mateo, 911 P.2d 496, 500 (Cal. 1996). Holmes has not put forth evidence that Felipe Hernandez directly caused himself injury by resisting arrest. Nor has he cited cases applying § 845.8(b) immunity to injury caused by an officer's use of force in response to a suspect's resistance. As to Cal. Gov. Code § 821.6, the Ninth Circuit has distinguished between "alleged tortious conduct [that] occur[s] during an arrest" and that which occurs during an investigation. Blankenhorn, 485 F.3d at 488. The plaintiff in Blankenhorn brought state law false imprisonment, negligence, assault and battery, and intentional infliction of emotional distress claims that arose out of a stop and arrest unrelated to an ongoing investigation. 485 F.3d at 467–70. Because Plaintiffs' state law claims are based on circumstances that, as in Blankenhorn, are distinguishable from investigations for the purposes of pursuing prosecution, § 821.6 does not apply.

---

[27] While the text of § 820.2 does not contain a reasonableness requirement, "it has long been established that this provision does not apply to officers who use unreasonable force in making an arrest." Blankenhorn v. City of Orange, 485 F.3d 463, 487 (9th Cir. 2007).

[28] Holmes claims immunity under Cal. Gov. Code § 835a. (Holmes MSJ at 20.) As that section does not exist, the Court assumes Holmes intends to refer to Cal. Penal Code. § 835a.

Because there is a genuine dispute of material fact with regard to the reasonableness of Holmes' use of force and Holmes is not protected by any state law immunities, summary judgment as to the battery claim is DENIED.

**D. Intentional Infliction of Emotional Distress**

Elijah Hernandez brings a claim for intentional infliction of emotional distress against Does 2–10, Oberlies, and Camacho for "mock[ing], laugh[ing] at, and intimidat[ing] Elijah as he attempted to document the detainment of his father." (Compl. ¶ 95.) The San Bernardino Defendants argue the officers' conduct was privileged because it was "pursuant to their lawful performance of their duties as police officers to investigate criminal activity." (S.B. MSJ at 26.) However, the San Bernardino Defendants have not met their burden in establishing the affirmative defense of privileged conduct. Specifically, they have not proven that the officers were exercising a legal right when mocking, laughing at, and intimidating Elijah Hernandez; that their "conduct was lawful and consistent with community standards;" or that they "had a good-faith belief that [they] had a legal right to engage in the conduct." See CACI No. 1605. Thus, summary judgment as to the intentional infliction of emotional distress claim is DENIED.

**E. *Monell* Claim**

Plaintiffs argue that San Bernardino is liable for the alleged constitutional violations because it "maintains and permits an official policy and custom of permitting the unlawful violation [of the] First and Fourth Amendment." (Compl. ¶ 105.) Specifically, Plaintiffs allege "deliberate[] indifference to properly train law enforcement officers in recognizing First Amendment protected activities, and how to appropriately respond to citizens exercising those protected rights." (Compl. ¶ 106.)

A municipality can be liable under section 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). It cannot, however, be held liable vicariously for its employees' actions on a respondeat superior theory. Monell, 436 U.S. at 691; see also AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012). "[L]ocal governments are responsible only for 'their own illegal acts.'" Connick, 563 U.S. at 60 (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). To establish liability, a plaintiff "must prove that 'action pursuant to official municipal policy' caused their injury." Id. (quoting Monell, 436 U.S. at 691). It is sufficient to show that the allegedly unconstitutional conduct was pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690.

"Although a constitutional violation must result from 'official municipal policy,' a county need not expressly adopt the policy. It is sufficient that the constitutional violation occurred pursuant to a 'longstanding practice or custom.'" Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it

must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 563 U.S. at 61.

With respect to a failure to train employees, the Supreme Court has set a high standard for municipal liability:

> A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. Only then can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.
>
> Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution. A less stringent standard of fault for a failure-to-train claim would result in de facto respondeat superior liability on municipalities.

Id. at 61–62 (citations omitted) (internal quotation marks omitted).

The San Bernardino Defendants move for summary judgment on the claims against the County[29] on the basis that "there is no evidence that the harm complained of by Plaintiffs resulted from an action by [the County] stemming from its having implemented or executed a policy, ordinance, regulation or decision officially adopted and promulgated by [the County's] officers, or as a result of [the County's] custom." (S.B. MSJ at 21.) Plaintiffs respond that the evidence shows that at least two supervisors were present during the incident and "did nothing to stop the detainment[,] show[ing] a complete 'deliberate indifference' to the constitutional right violation occurring." (Opp.-S.B. at 12.) Plaintiffs also assert that, considering the alleged violations and the number of officers on the scene, "clearly there was a failure to train San

---

[29] While the San Bernardino Defendants assert this argument as to Plaintiffs' First, Second, Fifth, and Sixth Claims, the Court notes that *Monell* liability is specific to claims brought under § 1983. Thus, the Court considers the parties' arguments only as they apply to Plaintiffs' Fourth Amendment and First Amendment claims.

Bernardino County Probation Officers on § 148(g) and the First Amendment Constitutional rights of individuals."  (Id.)

Because *Monell* liability based on custom "may not be predicated on isolated or sporadic incidents," the behavior of the supervising officers on the scene is insufficient to establish the existence of such a custom.  See Trevino, 99 F.3d 911 at 918.  With regard to failure to train, Plaintiffs have not put forth any evidence of the substance of the training San Bernardino County probation officers receive on Fourth and First Amendment rights.  Because the available evidence does not make clear if or how the officers' training was deficient, summary judgment is GRANTED as to Plaintiffs' First and Second Claims against San Bernardino.

### F.  Bane Act

Plaintiffs allege that Defendants "unlawfully detain[ed] Mr. Hernandez in an attempt to interfere with the exercise of his First Amendment free speech rights, and Fourth Amendment right to be free from unreasonable seizure."  (Compl. ¶ 111.)  Holmes argues that Plaintiffs' Bane Act claim fails because Holmes' conduct was lawful.  (Holmes MSJ at 18.)  He also asserts various state law immunities.[30]  (Id. at 18–20.)

California Civil Code Section 52.1, the Bane Act, authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law."  Sahymus v. Tulare Cty., No. 1:14–cv–01633–MCE–GSA, 2015 WL 3466942, at *6 (E.D. Cal. June 1, 2015) (quoting Jones v. Kmart Corp., 17 Cal. 4th 329, 331 (1998)).  Plaintiffs are required to show the application of a threat, intimidation, or coercion separate from the constitutional violation.  Chavez v. Cty. of Kern, No. 1:12-cv-01004 JLT, 2014 WL 412562, at *8 (E.D. Cal. Feb. 3, 2014).  In evaluating the threatening or coercive conduct, the Court must consider whether a reasonable person would have been intimidated or threatened by the actions of the defendants.  Richardson v. City of Antioch, 722 F. Supp. 2d 1113, 1147 (N.D. Cal. 2010).

Holmes points to no authority indicating that a defendant's bare assertion his conduct was lawful is a sufficient basis for granting summary judgment on a Bane Act claim.  For the same reasons discussed supra p. 16, none of the state law immunities Holmes claims are an appropriate basis for granting summary judgment.  Thus, summary judgment as to the Bane Act claim is DENIED.

///
///
///
///

---

[30] The San Bernardino Defendants' only argument for summary judgment on the Bane Act claim is that the County is not subject to *Monell* liability.  As discussed above, *Monell* liability relates to § 1983 claims, not state law claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**